## THE EMILY S. MALCOLM.

### SOUTH SEAS IMPORT & EXPORT CO. v. MALCOLM et al.

(Circuit Court of Appeals, Third Circuit. March 7, 1922.)

No. 2713.

**Shipping** ⬡➡39—**Charter party held not to guarantee capacity of schooner.**

Under a charter of a vessel "estimated" to "carry 225 tons, more or less, but not binding," the vessel could recover the full sum of money mentioned in the charter party, though capacity of the vessel was only 125 tons; there being no guaranty of tonnage.

Appeal from the District Court of the United States for the District of New Jersey; Joseph L. Bodine, Judge.

Libel by Algernon Scott Malcolm, captain of the schooner Emily S. Malcolm, against the South Seas Import & Export Company, claimant of 2,441 bags red mangrove bark, which filed cross-bill for noncarriage. From a decree for libelant, the cargo owner appeals. Affirmed.

Wall, Haight, Carey & Hartpence, of Jersey City, N. J., for appellant.

Kirlin, Woolsey, Campbell, Hickox & Keating, of New York City (Harry D. Thirkield and Robert S. Erskine, both of New York City, of counsel), for appellees.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

BUFFINGTON, Circuit Judge. In entering the decree which is appealed from in this case, the court below sustained the libel of the schooner Emily S. Malcolm, and awarded her the full balance of freight remaining unpaid on a charter party. The facts, as stated in the court's opinion, are:

"Algernon Scott Malcolm was the master and owner of the schooner Emily S. Malcolm, chartered while lying at Kingston, Jamaica, to New York, on or about March 10, 1919. Stern (charterer for the South Seas Company) engaged to provide and furnish said vessel 'with a full cargo of mangrove bark and/or other lawful merchandise which she can reasonably stow and carry, not exceeding her loading depth, which is designated by her Plimsoll mark— *it is estimated that the vessel will carry 225 tons, more or less but not binding.*' (The italics are mine.) Stern agreed to pay $3,750, American gold, or its equivalent, for the voyage, on signing the bills of lading in Kingston. The vessel was duly loaded with mangrove bark. It being bulky it was not possible to stow on her more than 130 tons, part of which was stored on the deck. The charterer of the vessel failed to pay, at Kingston, the full sum of money mentioned in the charter party, but did pay £520 on account and received from Capt. Malcolm a receipt. Capt. Malcolm, upon arrival at the port of New York, demanded payment of the balance of money due under the charter party, which was refused, and forthwith filed his libel against the cargo for the balance of the freight money earned."

The cargo owner filed a cross-bill for noncarriage, up to 225 tons, and for injury to the cargo carried. The case turned on the question whether the schooner would carry 225 tons of mangrove bark more or

less. If there was such guaranty, clearly, her failure to carry more than 125 tons was a breach. On that point the court held:

"The exact phraseology of the charter, however, clearly indicated that the capacity of the vessel was a mere estimate, and, as was stated, was *not binding.*"

We find no error in the court so construing the charter party, for if, as is the rule of construction, these (italicized) words are to be given the effect the words import, we can see no construction other than that adopted by the court. The word "estimated" itself implies an absence of contract certainty, and when to this uncertainty of an estimate are added the words "but not binding" we have an entire absence of those elements of certainty which would justify our construing a statement of the supposed, and therefore uncertain, tonnage capacity of a ship into the certainty of an absolute and ascertained guaranty of tonnage. We find no error in the court's construction of the charter party. Its decree should therefore be sustained, unless there was fault on the part of the schooner in cargo carriage. Such failure the court below held was not made out by the proofs, and a careful study of them on our part, leads us to the same conclusion.

The decree below, which sustained the schooner's libel and dismissed the cross-bill filed by the cargo owner, is affirmed.